**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| AMBER RAY<br>174 Windham Court<br>Newtown, PA 18940<br><br>　　　　Plaintiff,<br>　　v.<br><br>ELECNOR HAWKEYE, LLC<br>100 Marcus Blvd., Suite 1<br>Hauppauge, NY 11788<br><br>　　　　Defendant. | CIVIL ACTION<br><br>No.: _____<br><br><br><br>**JURY TRIAL DEMANDED** |

**CIVIL ACTION COMPLAINT**

Plaintiff, by and through her undersigned counsel, hereby avers as follows:

## I.　　INTRODUCTION

1.　　This action has been initiated by Amber Ray (*hereinafter* referred to as "Plaintiff") against Elecnor Hawkeye, LLC (*hereinafter* referred to as "Defendant" or "Elecnor") for violations of the Americans with Disabilities Act, as amended ("ADA"; 42 U.S.C. 12101) and the New Jersey Law Against Discrimination ("NJ LAD"). As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## II.　　JURISDICTION AND VENUE

2.　　This Court, in accordance with 28 U.S.C. § 1331, has jurisdiction over Plaintiff's claims because this civil action arises under laws of the United States.

3.　　This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v.

Washington, 326 U.S. 310 (1945) and its progeny. This Court has supplemental jurisdiction over Plaintiff's state-law claim(s) because such claim(s) arise out of the same common nucleus of operative facts as her federal claims asserted herein.

4.  Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district, and in addition, Defendants are deemed to reside where they are subject to personal jurisdiction, rendering Defendant a resident of the District of New Jersey.

5.  Plaintiff is proceeding herein under the ADA, and has properly exhausted her administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC. Other claims outlined in this lawsuit do not require administrative exhaustion.

### III. PARTIES

6.  The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7.  Plaintiff is an adult individual, with an address as set forth in the caption.

8.  Elecnor is a service provider in the energy sector and operates a business location at 92 N. Main Street Windsor, NJ 08561.

9.  At all times relevant herein, Defendant acted by and through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## IV.     FACTUAL BACKGROUND

10.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11.     Plaintiff is a hard-working and bright professional having earned a Bachelor's Degree from Rowan University.

12.     Plaintiff was hired by Defendant on or about June 3, 2021.

13.     Plaintiff was hired as a Project Manager/Estimator and assigned to work at Defendant's Windsor, NJ location.

14.     Plaintiff was qualified for this position, as she possesses the requisite skill, experience and education for it.

15.     Plaintiff was primarily supervised by Hal Meeler (Director of Underground Transmissions) and indirectly by John Petrina (NJ Operations Director).

16.     At all times relevant herein, Plaintiff has suffered from serious medical conditions, including Lupus (an auto-immune condition).

17.     Plaintiff has suffered with this medical condition for at least the last five (5) years and has obtained medical treatment for same, including but not limited to neurology, rheumatology and physical therapy treatment.

18.     These medical conditions affect Plaintiff's daily functioning, including but not limited to standing, walking, sleeping, running, performing daily chores and, at times, working.[1] This condition, at times, also causes Plaintiff severe fatigue.

19.     Despite these medical conditions, Plaintiff was able to perform all of the essential functions of her job, with accommodations.

---

[1] This paragraph is not meant to include an exhaustive list of activities in which Plaintiff is substantially limited but is meant to merely provide examples of same.

20. During the first several weeks of her employment, Plaintiff was praised by Defendant's management for her hard work and told that she was doing a good job.

21. In or about mid-July 2021, she informed Defendant's management (including Petrina and Meeler) about her auto-immune condition and told them that she may need to take periodic time off during flare-ups of the conditions.

22. In or about mid-July 2021, Plaintiff called out of work because of her aforesaid medical condition.

23. In or about mid-July 2021, Plaintiff also requested permission from Defendant's management to periodically work from home when she experienced flare-ups of her medical conditions.

24. In response, Defendant refused to permit her to work from home and told her, "we do our work at the office" and "you can't make your own fucking schedule."

25. Plaintiff's essential job functions primarily included working on a computer at a desk, which she could easily do at home.

26. Defendant permitted other (non-disabled) employees who performed similar jobs to work from home, including but not limited to other employees who were supervised by Meeler.

27. Defendant did not have any discussions or communications with Plaintiff regarding her requested accommodations, did not offer her any accommodations and did not engage in any other interactive process with Plaintiff to discuss her requests.

28. After Plaintiff disclosed her medical conditions in or about mid-July 2021, Plaintiff experienced a stark change in the way she was treated by Defendant's management.

29. For example, but not intended to be an exhaustive list, Plaintiff was spoken to in a rude and disrespectful manner by Defendant's management (including being cursed at), ignored and criticized for needing time off for her medical condition.

30. On or about July 26, 2021, Plaintiff experienced severe fatigue and an exacerbation of her medical conditions.

31. Despite this flare-up, Plaintiff continued to work in the office (albeit in pain) until on or about July 30, 2021, when she informed Defendant's management that she was experiencing a flare-up of her medical conditions and requested permission to work from home.

32. Meeler denied Plaintiff's request and told Plaintiff that they would "need to talk" once she returned to the office to determine if Plaintiff really wanted to work there.

33. The next day (on or about July 31, 2021), Plaintiff sent an email to Defendant's Human Resources ("HR") department informing them about her medical conditions, requesting a reasonable accommodation (in the form of permission to work from home during medical flare-ups) and explaining that her managers had failed to have any communications with her about accommodation options but rather denied all of her requests.

34. Defendant did not respond to Plaintiff's email.

35. Instead, on or about August 4, 2021, only a few days after Plaintiff reiterated her requests for reasonable accommodations because of her disabilities, Plaintiff was abruptly terminated.

36. During Plaintiff's termination meeting, she was informed by Meeler that she was being terminated because Defendant was "going in a different direction."

37. On or about August 5, 2021, Plaintiff reached back out to HR to inquire about the status of her accommodation requests.

38.     HR told Plaintiff that they were in the process of reviewing Plaintiff's request with Meeler when he decided to terminate her.

39.     HR informed Plaintiff that a "new HR director" would reach out to Plaintiff but Plaintiff never heard from Defendant again.

40.     Based on the foregoing, Plaintiff avers that she was terminated because of her disabilities/perceived disabilities and in retaliation for requesting reasonable accommodations and that Defendant failed to provide her reasonable accommodations, in violation of the ADA and NJ LAD.

**Count I**
**Violations of the Americans with Disabilities Act, as amended ("ADA")**
**(Actual/Perceived Disability Discrimination; Retaliation; Failure to Accommodate)**

41.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

42.     Plaintiff suffers from qualifying disabilities under the ADA.

43.     Plaintiff was qualified to perform the essential functions of her job, with accommodations.

44.     Plaintiff requested reasonable accommodations from Defendant, including but not limited to time off and permission to work from home during medical flare-ups.

45.     Defendant denied Plaintiff's requests, made derogatory comments to Plaintiff about her medical conditions/requested accommodations and failed to engage in any interactive process with Plaintiff to discuss her requested accommodations.

46.     Defendant also failed to offer Plaintiff any accommodations.

47.     Plaintiff was terminated very shortly after disclosing her disabilities to Defendant and requesting accommodations.

48. Plaintiff was terminated by Defendant because of her disabilities, perceived disabilities and/or in retaliation for requesting accommodations.

49. This conduct constitutes violations of the ADA.

### Count II
### Violations of New Jersey Law Against Discrimination ("NJ LAD")
**(Actual/Perceived Disability Discrimination; Retaliation; Failure to Accommodate)**

50. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

51. These actions as aforesaid also constitute violations of the NJ LAD.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, and benefits.

C. Plaintiff is to be awarded actual damages, as well as damages for the pain, suffering, and humiliation caused by Defendant's actions;

D. Plaintiff is to be awarded punitive damages as permitted by applicable law in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious, and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

E. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate;

F.       Plaintiff is to be awarded the costs and expenses of this action and a reasonable attorney's fees as provided by applicable federal and state law; and

G.       Plaintiff is to receive a trial by jury.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By: _____
Ari R. Karpf, Esquire
Jeremy M. Cerutti, Esquire
3331 Street Road
Two Greenwood Square
Suite 128
Bensalem, PA 19020
(215) 639-0801

Dated: January 25, 2022