<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| AMBER RAY,<br><br>    Plaintiff,<br><br>        v.<br><br>ELECNOR HAWKEYE, LLC,<br><br>    Defendant. | Civil Action No. 22-346 (MAS) (RLS)<br><br>**MEMORANDUM OPINION** |

<u>**SHIPP, District Judge**</u>

This matter comes before the Court upon Defendant Elecnor Hawkeye, LLC's ("Defendant") Motion for Summary Judgment. (ECF No. 25.) Plaintiff Amber Ray ("Plaintiff") opposed (ECF No. 27), and Defendant replied (ECF No. 30). The Court has carefully considered the parties' submissions and decides the matter without oral argument under Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons below, Defendant's Motion for Summary Judgment is granted in part and denied in part.

I.  **BACKGROUND**

A.  **Factual Background[1]**

Defendant is a utility contractor that performs construction and maintenance on electricity, gas, and telecommunication projects throughout the Northeast and Mid-Atlantic States. (Def.'s Statement of Facts ("DSOF") ¶ 7, ECF No. 25-2.) On June 3, 2021, Plaintiff, a 46-year-old female,

---

[1] Unless otherwise indicated, the Court recites only the uncontested facts necessary to contextualize the present motion. All other relevant or material facts that are contested will be recited where applicable in the Court's analysis below.

was hired by Defendant as a Project Manager/Estimator. (*Id.* ¶¶ 5, 8.) Plaintiff was assigned to work in Defendant's Windsor, New Jersey location, and reported directly to Hal Meeler ("Meeler"), Director of Underground Transmission, and John Petrina ("Petrina"), Director of New Jersey Operations. (*Id.* ¶ 9.) During the hiring process, Plaintiff completed an Equal Employment Opportunity and Self-Identification Form ("EEO Statement") which asked whether Plaintiff was an individual with a physical, mental, or emotional impairment; on the form, Plaintiff indicated she did not have any impairment.[2] (*Id.* ¶ 11.) During the hiring process and upon her hiring, Plaintiff was advised that she would be required to work physically in-person in Defendant's office. (*Id.* ¶¶ 12-13.) Plaintiff also received and acknowledged a copy of the employee handbook, which states that accommodation requests may be submitted to Defendant's Human Resources ("HR") Department. (*Id.* ¶¶ 22-23; Pl.'s Resp. Statement of Facts ("PRSOF") ¶¶ 22-23, ECF No. 27-1.)

On Friday, July 30, 2021, Plaintiff sent Meeler a text message stating that she would be working remotely from home that day. (July 30, 2021 Text Message, ECF No. 25-15; DSOF ¶ 24.) Based on the evidence in the record, this was the first time Plaintiff indicated or requested that she work remotely from home. Meeler called Plaintiff and told her that her position required her to work in person at the office, and that he planned to discuss the issue with Plaintiff the following Monday, on August 2, 2021. (DSOF ¶ 28.) After Meeler's phone call with Plaintiff, Meeler forwarded Plaintiff's text message to Petrina and Brynn Noone ("Noone"), Defendant's HR Manager, and requested that the correspondence be documented in Plaintiff's file. (July 30, 2021 Text Message; DSOF ¶ 29.) On the same day, Plaintiff—while speaking with Petrina about an

---

[2] Plaintiff disputes, however, that checking "No" for the disability section in the EEO Statement means that she does not have a disability pursuant to the claims that she brings in the instant matter. (PRSOF ¶ 11.)

unrelated business issue—noted that Meeler made a negative comment about Plaintiff working remotely from home. (July 30, 2021 Text Message; DSOF ¶ 33; PRSOF ¶ 33.)

Later on July 30, Meeler and the Chief Operations Officer, Matt Braunwart ("Braunwart"), spoke on the phone; Defendant alleges that Meeler and Braunwart decided to terminate Plaintiff during this telephone call because of "her insubordination and unprofessionalism." (DSOF ¶¶ 30-31; Def.'s Moving Br. 1, ECF No. 25-3.) Meeler also spoke with Petrina about the termination decision that day. (DSOF ¶ 34.) Plaintiff, however, disputes this allegation and argues that the decision to terminate her was made several days later, on August 3, 2021, in retaliation after she requested a work accommodation on July 31, 2021. (PRSOF ¶ 31.)

On Saturday, July 31, 2021, a day after she informed Meeler that she would be working remotely from home on July 30, Plaintiff sent an e-mail message to Noone requesting a "reasonable accommodation work adjustment due to a medical condition[,]" specifically to "telecommute until the [Covid delta variant] [t]ransmission rates subside[d.]" (Pl.'s Accommodation Request, ECF No. 27-15.) Plaintiff indicated that she has "an auto-immune disorder, and even though [she is] vaccinated, it [does not] protect [her] as well as other people without medical issues." (*Id.*) Plaintiff stated that she "already asked [her two] bosses and they said no[,] [e]ven though [she] can do [her] job at home and [did her] same job at home, for [her] last company." (*Id.*) Noone forwarded Plaintiff's correspondence to Aubrey Allen ("Allen"), a newly hired HR director and asked if it

would be possible to discuss the correspondence on Monday.[3] (*Id.*; Allen Dep. 33:8-14.) Allen stated that she discussed the correspondence with Petrina, but ultimately did not discuss it with Noone. (Allen Dep. 33:17.)

On August 2 and August 3, 2021, Plaintiff "called out of work" to care for her grandchild. (Def.'s Moving Br. 1-2; DSOF ¶ 41.) On August 2, Meeler, Petrina, Allen, and Noone participated in a phone call discussing Plaintiff's request for accommodations. (Petrina Dep. 91:18-92:1; Allen Dep. 34:22-35:8.) In this meeting, Petrina stated that "the company [is not] allowing [or] providing accommodations[4] for operations employees or project managers." (Allen Dep. 35:14-21.)

On August 4, 2021, Plaintiff met with Meeler and Petrina and was informed that her employment with Defendant was terminated, and that Defendant would "be going in a different direction." (DSOF ¶ 44; Pl.'s Dep. 88:7-12; Meeler Dep. 47:6-10, ECF No. 25-12; Petrina Dep. 74:20-75:8, ECF No. 25-11.)

On January 25, 2022, Plaintiff filed a Complaint alleging that Defendant violated the Americans with Disabilities Act ("ADA") and the New Jersey Law Against Discrimination ("NJLAD"). (Compl., ECF No. 1.) Defendant filed a Motion for Summary Judgment. (ECF No. 25.) Plaintiff opposed (ECF No. 27), and Defendant replied (ECF No. 30).

---

[3] Allen was hired by Defendant on July 26, 2021. (Def.'s Moving Br. 8, n.2; *see* also Allen Dep. 7:5-6, ECF No. 25-17.) Upon joining the team, Allen was made aware by Meeler and Petrina of Plaintiff's performance, and "inappropriate comments" about her managers made to other people. (DSOF ¶ 37; *see* Allen Dep. 7:5-6, 26:6-27.) Allen asked that Meeler and Petrina send her an e-mail message, describing the incidents in detail. (*Id.* 27:7-12.) Allen states that within a day or two, on August 2, 2021, Meeler and Petrina sent an e-mail message describing Plaintiff's allegedly inappropriate behavior to employees in Defendant's HR Department. (Meeler and Petrina's Aug. 2, 2021 Correspondence, ECF No. 27-17.) Allen reviewed the correspondence and had another call with Meeler and Petrina to "regroup and acknowledge" their e-mail message; Allen, however, could not recall exactly when this call took place. (Allen Dep. 27:20-22, 28:5-29:15.)

[4] Based on Allen's testimony, it is unclear whether Allen was referring to all accommodations, or accommodations specifically related to working remotely. (*See generally* Allen Dep.)

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 56(a)[5] states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact raises a genuine dispute "if evidence is such that a reasonable [factfinder] could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) ("By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.").

The Court does not "weigh the evidence and determine the truth of the matter" but will determine whether a genuine dispute necessitates a trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in [her] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). In making its decision, the Court must consider all facts and their logical inferences in the light most favorable to the nonmoving party. *Pollock v. Am. Tel. & Tel. Long Lines*, 794 F.2d 860, 864 (3d Cir. 1986); *see also Anderson*, 477 U.S. at 251-52 (stating that the court must assess "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.").

---

[5] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

While the moving party bears the initial burden of showing the absence of a genuine dispute of material fact, meeting this obligation shifts the burden to the nonmoving party to "set forth specific facts showing that there is a genuine [dispute] for trial." *Id.* at 250. If the nonmoving party fails to demonstrate proof beyond a "mere scintilla" of evidence that a genuine dispute of material fact exists, then the court must grant summary judgment. *Big Apple BMW v. BMW of N. Am.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

III.   **DISCUSSION**

In her Complaint, Plaintiff asserts that Defendant violated the ADA and NJLAD by: (1) terminating her because of her disabilities or perceived disabilities; (2) terminating her in retaliation for requesting reasonable accommodations; and (3) failing to provide her with reasonable accommodations. (Compl. ¶¶ 41-51.) Courts considering a NJLAD claim are guided by the same framework that guides the analysis of an ADA claim, and thus the Court analyzes the claims together. *See Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 956 (3d Cir. 1996) (citations omitted).

A.   **Discrimination Claim**

Plaintiff asserts a discrimination claim under the ADA and NJLAD, alleging that she was discriminated against and ultimately terminated because of her actual and/or perceived disability. (Compl. ¶¶ 41-51; Pl's Opp'n Br. 17-25.) Plaintiff alleges that she "suffers from a [sic] several auto-immune conditions which affect her immune system and cause her fatigue and pain[,]" and that she "has obtained treatment for these conditions for the last several years and has been prescribed medication for them." (Pl's Opp'n Br. at 21; *see also* Compl. ¶ 17.)

The ADA makes it unlawful to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). To establish a prima facie case of disability discrimination under

6

the ADA, a plaintiff must demonstrate that: (1) she has a disability within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered adverse employment action because of the discrimination.[6] *Reyer v. Saint Francis Country House*, 243 F. Supp. 3d 573, 591 (E.D. Pa. 2017) (citing *Gaul v. Lucent Techs.*, 134 F.3d 576, 580 (3d Cir. 1998)). Additionally, a plaintiff must demonstrate that her disability "actually motivated" the defendant's decision to terminate her. *See Woloshin v. Rutgers Univ.*, No. 15-2588, 2016 WL 5660460, at *3 (D.N.J. Sept. 28, 2016) (quoting *Raytheon Co. v. Hernandez*, 540 U.S. 44, 124 (2003)). The Court first assesses whether Plaintiff demonstrates that she has a disability within the meaning of the ADA.

i.       *Disability*

In her Complaint, Plaintiff alleges that she "has suffered from serious medical conditions, including Lupus (an auto-immune condition). . . . for at least the last five (5) years and has obtained medical treatment for [the] same, including but not limited to neurology, rheumatology[,] and physical treatment." (Compl. ¶¶ 16-17.) Plaintiff clarified in her deposition, however, that months after she stopped working for Defendant, Plaintiff's doctor told her that she was misdiagnosed with Lupus and that she actually has Hypermobile Ehlers-Danlos syndrome, a

---

[6] Similarly, a prima facie case of disability discrimination under the NJLAD requires the employee to demonstrate that: (1) she was handicapped; (2) she was otherwise qualified to perform the essential functions of the job, with or without the accommodation by the employer; (3) she was fired; and (4) the employer then sought someone to perform the same work. *Clowes v. Terminix Int'l, Inc.*, 109 N.J. 575, 597 (1988) (citations omitted).

complex musculoskeletal condition.[7] (Pl.'s Dep. 140:15-141:6; 137:19-24; 206:12-19; 145:18-24, ECF No. 27-3.) Although Plaintiff does not list specific diagnoses other than Lupus in her briefs, she testified that she has fibromyalgia, Raynaud's, Sjogren's, and polyarthritis in her deposition.[8] (*Id.* at 136:19-24; 137:1-17; 138:6-8; 256:6-9.)

Under the ADA, a plaintiff is found to be disabled if she demonstrates: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The Court assesses whether Plaintiff is disabled under the ADA based on any of the three factors.

>           a.      **Impairment Substantially Limits One or More of Plaintiff's Major Life Activities**

In determining whether a plaintiff's impairment substantially limits a major life activity, the Supreme Court has emphasized that courts should "determine the existence of disabilities on a case-by-case basis." *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306-07 (3d Cir. 1999) (quoting *Albertsons, Inc. v. Kirkingburg*, 527 U.S. 555, 566 (1999)); *see also Alston v. Park Pleasant, Inc.*, 679 F. App'x 169, 172 (3d Cir. 2017) (finding that the "determination of whether an impairment substantially limits a major life activity requires an individualized assessment[,]" even for seemingly qualifying disabilities, like cancer (quoting 29 C.F.R. § 1630.2(j)(1)(iv))). "The

---

[7] Plaintiff testified that she is unclear about exactly when she found out about the misdiagnosis. (Pl.'s Dep. 203:2-205:6.) She initially testified that she found out that she may not have Lupus around November 2021, but later stated that she may not have found out until January or February 2022, after the instant Complaint—which states she has Lupus—was filed. (*Id.* 203:2-205:21.) Plaintiff stated that she is still unsure of her exact diagnosis because she has several symptoms and "multiple people [are] telling [her] multiple different things." (*Id.* 308:16-22.) She noted that "this is a similar journey for people who have auto[-]immune issues." (*Id.* 308:23.) Plaintiff stated that she did not have any medical records or notes regarding the misdiagnosis. (*Id.* at 206:4-19.)

[8] Plaintiff also testified that she has attention deficit hyperactivity disorder ("ADHD") but stated that "[she does not] consider [it to be] a [relevant] condition." (Pl.'s Dep. 138:23-139:1.)

Court must begin by identifying the specific life activity or life activities that [a] plaintiff alleges her disorder affected, and then evaluate whether her condition 'substantially limits' those life activities." *See Taylor*, 184 F.3d at 306-07.

The Equal Employment Opportunity Commission ("EEOC") regulations define "substantially limits" as:

> (i) [u]nable to perform a major life activity that the average person in the general population can perform; or (ii) [s]ignificantly restricted as to the condition, manner[,] or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

29 C.F.R. § 1630.2(j)(1). In considering whether an individual is substantially limited in a major life activity, the EEOC regulations state the following factors should be considered: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." 29 C.F.R. § 1630.2(j)(2). While the ADA does not define "major life activity," the EEOC regulations define "major life activities" to include functions such as "[c]aring for oneself, performing manual tasks, . . . walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working[.]" *Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 434 (3d Cir. 2009) (citing 29 C.F.R. § 1630.2(i)).

In a single paragraph in her Complaint, Plaintiff alleges that her medical conditions cause her physical impairment, severe fatigue, and "affect [her] daily functioning, including but not

limited to standing, walking, sleeping, running, performing daily chores, and, at times, working."[9] (Compl. ¶ 18.) Yet, Plaintiff's deposition testimony suggests that her medical condition does not substantially limit the aforementioned life activities.[10] Plaintiff testified that her alleged disability does not affect her ability to sit down, stand up, walk,[11] or sleep. (Pl.'s Dep. 309:18-311:1.) In fact, Plaintiff stated that she planned to still walk her dog on July 30, 2021, when she had her flare-up that prevented her from working in person. (*Id.* at 191:32-192:13.) *See Sampson v. Methacton Sch. Dist.*, 88 F. Supp. 3d 422, 437 (E.D. Pa. 2015) (finding that even "[m]oderate difficulties in walking or climbing stairs do not bring an individual within the class of persons protected by the ADA." (citing *Kelly v. Drexel Univ.*, 94 F.3d 102, 108 (3d Cir.1996))). Although Plaintiff testified that she has some limitation when running and that she has chronic fatigue, such as "deep aches in [her] muscles and bones" (Pl.'s Dep. 310:17-311:13, 312:4-22), Plaintiff has not demonstrated that she is substantially restricted from running compared to an average person in the general population. In regard to "performing daily chores," Plaintiff similarly has not demonstrated that

---

[9] In a footnote, Plaintiff states that she is only providing an example of activities in which Plaintiff is substantially limited from performing. (Compl. ¶ 18 n.3.) Plaintiff does not discuss any specific life activities that she is allegedly substantially limited from performing in her summary judgment submissions. The Court is tasked with "identifying the *specific* life activity or life activities that Plaintiff alleges her disorder affected, and then evaluate whether her condition 'substantially limits' *those life activities*." *Taylor*, 184 F.3d at 306-07 (quoting *Albertsons, Inc.*, 527 U.S. at 566 (emphasis added)). The Court, accordingly, only assesses the specific life activities that Plaintiff alleges in her Complaint does not entertain other hypothetical life activities that Plaintiff allegedly chose not to include in her list of examples. As noted by the Third Circuit, "[j]udges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 (3d Cir. 2006) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

[10] The Court relies upon Plaintiff's deposition testimony—taken approximately a year after she was terminated by Defendant—as her Complaint or briefs do not otherwise clarify or discuss how her specific life activities were affected by her medical condition. In testifying, Plaintiff did not distinguish that her symptoms differ from when she was terminated by Defendant.

[11] Plaintiff testified that she had a torn meniscus that, at times, causes pain but stated that it does not limit her daily life activity of walking. (Pl.'s Dep. 310:4-16.) She also noted that "[she] can walk to a certain amount." (*Id.* 136:14-15.)

she is substantially limited in performing the life activity compared to an average person in the general population. Plaintiff stated that she is able to drive to pick up groceries, and that she primarily does the laundry, cooking, and all of her household activities with only "some help" from her teenage son. (*Id.* at 18:22-10; 134:3-11.) *See Marinelli v. City of Erie, Pa.*, 216 F.3d 354, 362 (3d Cir. 2000) (finding that EEOC regulations list "caring for oneself . . . such as washing dishes and picking up trash," as a major life activity[.]"). Plaintiff also confirmed that she is able to take care of herself while supporting her son, and travel when necessary, noting that a doctor has not restricted her ability to go to public places. (*Id.* at 133:4-17, 134:3-7, 132:5-19.)

Regarding Plaintiff's allegation that her medical conditions "affect her daily functioning, including . . . at times, *working*" because she experiences "flare-ups" which require her to "take periodic time off" from work, Plaintiff fails to provide evidence that her ability to perform her work is substantially limited. (Compl. ¶¶ 18, 21-23 (emphasis added); PRSOF ¶ 11.) "Where the major life activity at issue is working, the term 'substantially limited' is defined as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills[,] and abilities.'" *Smiley v. Daimler Chrysler*, 589 F. Supp. 2d 471, 483 (D. Del. 2008) (quoting *Deane v. Pocono Med. Ctr.*, 142 F.3d 138 (3d Cir. 1998)). Here, Plaintiff was and is not substantially limited or significantly restricted from a class of jobs—Plaintiff testified that she is "somebody who is generally able to work . . . . [f]ull-time without restrictions" and is medically able to work up to 12 hours a day if she needs to. (Pl.'s Dep. 131:24-132:4, 133:18-22.) Plaintiff testified that she was able to perform all functions of the job when employed by Defendant, other than the one day in July when she stated she needed to work from home. (*Id.* 143:11-23.) Plaintiff stated that she does not have any limitations with her short- or long-term memory or her ability to think. (*Id.* 309:11-17.) Finally,

Plaintiff had a job prior to working for Defendant, and was hired to work for another company after she was terminated by Defendant, exhibiting a past and continuing ability to perform her work duties. (*Id.* 20:1-20, 141:14-23.)

To the extent Plaintiff relies upon her medical record and diagnoses, the evidence is insufficient to show that Plaintiff was so substantially limited from major life activities by her alleged impairment that she can be considered disabled under the ADA. Indeed, the Third Circuit has held that a diagnosis does not automatically equate to a disability under the ADA. *See Kania v. Potter*, 358 F. App'x 338, 342 (3d Cir. 2009) ("But despite his diagnosis of facet syndrome, the record reveals no doctor who has placed a physical limitation on [plaintiff].") Accordingly, Plaintiff's medical records indicating that she received medication for her alleged auto-immune conditions—such as diffuse connective tissue disease, polyarthritis, and fibromyalgia (*see* ECF No. 27-6, 27-7, 27-8)—are alone insufficient to find that Plaintiff was substantially limited in a major life activity. *See Weisberg v. Riverside Twp. Bd. of Educ.*, 180 F. App'x. 357, 359-62 (3d Cir. 2006) (finding that a plaintiff was not substantially limited from major life activities because he was not "substantially limited as compared to the average person in the general population," even though a doctor's report indicated plaintiff had post concussive syndrome or a concussive brain injury (internal quotations) (citing 29 C.F.R. § 1630.2(j)(1))).

In sum, the record fails to sufficiently provide evidence and demonstrate how Plaintiff is substantially limited from performing specific major life activities. *See Salamone v. Carter's Retail, Inc.*, No. 09-5856, 2013 WL 12430573, at *8 (D.N.J. Jan. 31, 2013) (finding that plaintiff did not demonstrate that she was substantially limited from a major life activity because she did not "adequately demonstrate[] what condition she had" and did not "demonstrate[] how any alleged condition has impacted her life."); *Marinelli*, 216 F.3d at 363 (finding that plaintiff did not

demonstrate he was substantially limited from a major life activity because although "[plaintiff] casually mentioned . . . a task during his testimony, he failed to indicate how his medical difficulties affected his ability" to perform the specific life activity).[12]

Having failed to adequately address and demonstrate the nature and severity of her impairment, the expected duration of the impairment, or the potential long-term impact of the impairment, this Court finds that Plaintiff fails to raise a genuine dispute as to whether she had an "impairment that substantially limits one or more major life activities" when Defendant terminated her. *See* 42 U.S.C. § 12102(1).

### b.    Record of Impairment

A plaintiff is considered to have a record of disability if he or she has "a history of, or had been misclassified as having, an impairment that substantially limited a major life activity." *Parrotta v. PECO Energy Co.*, 363 F. Supp. 3d 577, 594 (E.D. Pa. 2019) ("[A plaintiff] must show a record of an impairment substantially limiting a major life activity." (citing *Eshelman*, 554 F.3d at 437)). "A plaintiff attempting to prove the existence of a 'record' of disability still must demonstrate that the recorded impairment is a 'disability' within the meaning of the ADA." *Eshelman*, 554 F.3d at 437. In conjunction, a plaintiff must also demonstrate that the defendant relied upon the plaintiff's record of impairment when it terminated the plaintiff. *Id.*

---

[12] *See also Howard v. Pa. Dep't of Pub. Welfare*, No. 11-1938, 2013 WL 102662, at *11 (E.D. Pa. Jan. 9, 2013) (finding that plaintiff produced evidence, like an affidavit, deposition, and "voluminous medical records," "from which a reasonable jury could conclude her fibromyalgia substantially limits her ability to walk, sleep, and perform manual tasks as compared to most people in the general population."); *Tish v. Magee-Women's Hosp. of Univ. of Pittsburgh Med. Ctr.*, No. 06-820, 2008 WL 4790733, at *8 (W.D. Pa. Oct. 27, 2008) (finding that a reasonable factfinder could find plaintiff to be substantially limited from major life activities based on information in her affidavit detailing the extent of her injuries, medical records, documentary evidence, and doctors' notes).

Here, Plaintiff seems to allege that she has sufficiently demonstrated a record of impairment because she "has obtained treatment for these conditions for the last several years and has been prescribed medication" for the "several auto-immune conditions which affect her immune system and cause her fatigue and pain." (Pl.'s Opp'n Br. at 21.) As discussed above, however, Plaintiff has not presented evidence that her impairment substantially limited a major life activity while she was employed by or when she was terminated by Defendant. *See Olson*, 101 F.3d at 953 (finding that plaintiff did not show he had a record of impairment because "[t]he evidence . . . reflects [plaintiff's] ability to function normally despite what appear to be serious psychological and emotional problems[, which] defeats that part of [plaintiff's] ADA claim."); *Howell v. Sam's Club No. 8160/Wal-Mart*, 959 F. Supp. 260, 268 (E.D. Pa. 1997), *aff'd sub nom.*, *Howell v. Sam's Club No. 8160 Wal-Mart*, 141 F.3d 1153 (3d Cir. 1998) (finding that there is no information "by which the court can conclude there is a genuine [dispute] of material fact as to whether [plaintiff] has a record of impairment, because none of [the submitted documents] discuss how [plaintiff's] impairments substantially limit any of his major life activities.").

Further, the Third Circuit has determined that a "relatively short-term absence from work, without any long-term impairment, is generally held to be insufficient to create a record of disability." *Parrotta*, 363 F. Supp. 3d at 594. Accordingly, Plaintiff's alleged periodic flare-ups, which require Plaintiff to take time off work (*see* Compl. ¶ 21), do not meet the threshold to establish a record of impairment under the ADA. *See Parrotta*, 363 F. Supp. 3d at 594 (noting the Third Circuit has held that a "six-month absence from work for cancer treatment, without a showing of long-term impairment, was insufficient to create a record of impairment." (citing *Eshelman*, 554 F.3d at 434)).

The record Plaintiff relies upon does not demonstrate that she was substantially limited in any major life activity, and thus this Court finds that Plaintiff has not raised a genuine dispute of material fact as to whether she has a record of impairment under the ADA.

### c.      Being Regarded as Having an Impairment

Finally, "when an employer 'misinterprets information about an employee's limitations to conclude that the employee is incapable of performing a wide range of jobs,' that employee is 'regarded as' disabled under the ADA." *Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 381 (3d Cir. 2002) (citing *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 190 (3d Cir. 1999) (alterations omitted)). Therefore, to be "regarded as" disabled under the ADA, a plaintiff must demonstrate either that: (1) despite having no impairment at all, the defendant erroneously believed that the plaintiff had an impairment that substantially limited one or more of her major life activities; or (2) the plaintiff had a non-limiting impairment that the defendant mistakenly believed substantially limited one or more of her major life activities. *See Eshelman*, 554 F.3d at 434 (citing *Tice v. Ctr. Area Transp. Auth.*, 247 F.3d 506, 514 (3d Cir. 2001)).

Under a "regarded as" claim, the Court must inquire whether a defendant *perceived* the plaintiff as disabled within the meaning of the ADA, not whether plaintiff was *actually* disabled at the time defendant decided to terminate her. *See id.* (citations omitted). In short, the employer "must regard the employee to be suffering from an impairment within the meaning of the statutes, not just that the employer believed the employee to be somehow disabled." *Rinehimer*, 292 F.3d at 381 (citations omitted). Consequently, liability only attaches to a "mistake that leads the employer to think that the employee is substantially limited in a major life activity" and terminates the employee because of it. *Taylor*, 177 F.3d at 192. "[A]n inquiry into how an employee was 'regarded' is necessarily quite fact-specific, and all of the surrounding circumstances may be

relevant in reaching a conclusion." *Ramage v. Rescot Sys. Grp., Inc.*, 834 F. Supp. 2d 309, 323 (E.D. Pa. 2011) (quoting *Tice*, 247 F.3d at 515).

To support her "regarded as" claim, Plaintiff asserts in a single paragraph that she "was terminated within less than five weeks of disclosing her medical conditions to Petrina and Meeler (her managers/decision-makers)[,]" and "was replaced by an employee outside of her protected class[.]" (Pl.'s Opp'n Br. 23.) Plaintiff further asserts that Defendant's treatment towards her changed "only after she disclosed her medical conditions to Defendant." (*Id.*) Indeed, a close temporal proximity between the dates an employer learns of an employee's physical or mental impairment and the employee's termination may be sufficient to raise an inference of "regarded as" disability discrimination. *Matias v. Terrapin House, Inc.*, No. 21-2288, 2021 WL 4206759, at *2 (E.D. Pa. Sept. 16, 2021) (citations omitted).

As an initial matter, Plaintiff fails to acknowledge that one may not allege a perceived disability based on impairments that are "transitory" and "minor." 42 U.S.C. § 12102(3)(B); *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014) ("[T]he relevant inquiry is whether the impairment that the employer perceived is an impairment that is *objectively* transitory and minor." (emphasis added)). The ADA defines "transitory" as an impairment with an actual or expected duration of six months or less, but does not otherwise define "minor."[13] *See Eshleman*, 961 F.3d at 247-48 (citing 42 U.S.C. § 12102(3)(B)). Here, Plaintiff does not provide the Court with her arguments as to why her auto-immune conditions should not be considered transitory or minor. The Court thus relies upon evidence in the record to apply the objective standard within Plaintiff's "regarded as" claim, which overwhelming supports the conclusion that

---

[13] Although the ADA does not define "minor," the Third Circuit has found that district courts are required nonetheless to separately evaluate whether an impairment is minor. *See Eshleman*, 961 F.3d at 247-48 (citing 42 U.S.C. § 12102(3)(B)).

Plaintiff's impairments were in fact minor. Plaintiff alleges that she "has been prescribed medication for" and "has obtained treatment for [multiple auto-immune] conditions for the last several years." (Pl's Opp'n Br. at 21.) Yet, as noted *supra*, Plaintiff readily testified that she was not limited in her ability to sit down, stand up, walk, drive, sleep, or do household chores. (Pl.'s Dep. 18:22-10; 134:3-11; 309:18-311:1.) Plaintiff testified that even with her auto-immune conditions, she is "generally able to work . . . . [f]ull-time without restrictions[,]" and was able to perform all functions of the job when employed by Defendant, other than on July 30, 2021. (*Id.* 131:24-132:4; 143:11-23.) *See Bush v. Donahoe*, 964 F. Supp. 2d 401, 423 (W.D. Pa. 2013) (finding that plaintiff's impairment was objectively minor because, at the summary judgment stage, there was overwhelming evidence in the record that the plaintiff could perform all duties in her job description, despite her impairment of a sprained ankle/foot).

Assuming Plaintiff can demonstrate that her impairment is not transitory or minor, the Court assesses all facts and surrounding circumstances relevant to Plaintiff's regarded as claim for the sake of completeness. *See Ramage*, 834 F. Supp. 2d at 323. Still, the Court finds that there is insufficient evidence that Defendant regarded Plaintiff as disabled under the ADA to survive summary judgment. In essence, Plaintiff fails to show that Defendant terminated her because of its *belief* that she was substantially limited in one or more major life activities, or unable to work in a particular class or broad range of jobs. *See* 42 U.S.C. § 12102(2)(A). Plaintiff stated that during her employment, she mentioned "in passing" to select employees, including Petrina and Meeler, that she has "medical issues," "auto-immune issues," or Lupus, which Plaintiff now believes was

a misdiagnosis.[14] (Compl. ¶ 16; Pl.'s Dep. 143:24-144:4; 145:12-155:9; 314:1-6.) Plaintiff, however, does not provide evidence to show that Meeler and Petrina (her supervisors and managers), or Braunwart, knew *and perceived* Plaintiff's impairment as substantially limiting when making the decision to terminate her. *See Kelly v. Drexel Univ.*, 94 F.3d 102, 109 (3d Cir. 1996) (citations omitted) (clarifying that "the mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that that perception caused the adverse employment action" because it fails to satisfy that the employer terminated the employee *because of* a perceived impairment); *see also Deane v. Pocono Med. Ctr.*, 142 F.3d 138, 144-45 (3d Cir. 1998) (finding that the defendant regarded plaintiff as substantially limited in a major life activity because there was "deposition testimony from [defendant's employees] documenting confusion as to the extent of [plaintiff's] physical capacity" and "evidence that [defendant] fundamentally misunderstood and exaggerated the limitations that the . . . injury imposed on [plaintiff].") To the contrary, "there is no evidence that any of [Plaintiff's] co-workers or supervisors observed her having any difficulty performing her job" due to her alleged impairment. *See Bush*, 964 F. Supp. 2d at 423. For example, Meeler and Petrina acknowledged that throughout Plaintiff's employment, she was capable of understanding and performing the tasks required for her job and did not regard her as substantially limited in any major life activity. (Petrina Dep. 40:1-41:2 (testifying that Plaintiff "was capable" of, and for the most part, satisfactorily performed the job); Meeler Dep. 30:12-17 (testifying that Plaintiff "seemed to be . . . doing a good job understanding" her job).)

---

[14] Indeed, Petrina testified that Plaintiff mentioned having Lupus, but stated that Plaintiff did not inform him of how the condition affected her and did not request to work from home during that discussion. (Petrina Dep. 66:21-67:6, 68:4-15.) Meeler, however, testified that Plaintiff never told him of any medical issues. (Meeler Dep. 40:12-16.)

To the extent Plaintiff states that she informed employees in the HR Department about her impairment,[15] the evidence is less relevant because such employees have less or "no role in the decision to terminate her."[16] *Ramage*, 834 F. Supp. 2d at 325 (stating that "comments of a non-supervisory employee with no employment decisional authority carry less weight as to whether the employer regarded an employee as disabled" (citing *Sizemore v. Con. Rail Corp.*, 56 F. App'x 582, 584 (3d Cir. 2011))). To be sure, the Court acknowledges that Allen, the newly hired HR director, indicated that she was involved in the "collective" decision to terminate Plaintiff with Meeler, Petrina, Braunwart (Allen Dep. 30:5-23), and that Allen became aware that Plaintiff has an "auto[-]immune disorder" on August 1, 2021, several days before Plaintiff was terminated (Pl.'s Accommodation Request). Yet, Plaintiff fails to demonstrate that Allen had more than just mere knowledge that Plaintiff had an impairment. There is no evidence showing that Allen regarded Plaintiff "to be suffering from an impairment within the meaning of the statutes." *See Rinehimer*, 292 F.3d at 381. Nowhere in Plaintiff's briefs or testimony does she state that Allen believed that Plaintiff was substantially limited in a major life activity. (Pl.'s Dep. 260:4-20.)

Finally, Plaintiff's allegation that she was treated differently after disclosing her medical conditions to Defendant, without more, is barebones and does not suffice to raise a genuine dispute of material fact. (*See* Pl.'s Opp'n Br. 25.) *See Ramage*, 834 F. Supp. 2d at 324 (finding that while a "[plaintiff's] testimony about how she felt and her general impressions of her fellow employees'

---

[15] Plaintiff admits that she did not speak to the HR Department about her medical condition or need for an accommodation prior to July 31, 2023. (PRSOF ¶ 48.)

[16] The record suggests that termination decisions are typically made by managers, although they may "talk to an executive before making a final decision." (Noone Dep. 27:16-22, ECF No. 25-13; *see also* Braunwart Dep. 55:3-11, ECF No. 25-16 (stating "the manager is in charge of their personnel")). Noone testified that managers do not need to get approval from the HR department before terminating an individual, and only need approval from an executive. (Noone Dep. 28:14-22.) Allen, the new HR director, however, testified that termination typically requires "managers and/or department heads, herself and an executive." (Allen Dep. 11:8-12.)

attitudes toward her are relevant, they do not raise a genuine [dispute] of fact as to whether her employer regarded her as substantially limited in her ability to see or think.").

Although "Plaintiff pled disability discrimination in her [C]omplaint and discussed her physical condition during her deposition. . . . a careful review of the [parties' briefs and the evidence] do[es] not reveal a genuine [dispute] of material fact as to Plaintiff's alleged disability." *See Salamone*, No. 09-5856, 2013 WL 12430573, at *8. The Court therefore finds that Plaintiff does not raise a genuine dispute of material fact regarding whether she was disabled as defined by the ADA at the time of her termination. This Court, accordingly, declines to discuss the remaining factors under Plaintiff's disability discrimination claim. Defendant's Motion for Summary Judgment as to Plaintiff's ADA discrimination claim is granted.

### B.    Reasonable Accommodation Claim

Next, Plaintiff asserts that Defendant failed to accommodate her request to work remotely. Plaintiff states that she requested the reasonable accommodation of telecommuting because her several auto-immune conditions cause her "muscle weakness, fatigue, body aches, pain in hands, wrists, ankles, headaches and neck pain." (PRSOF ¶ 11.)

To establish a prima facie case of a failure to accommodate under the ADA, Plaintiff must demonstrate that: "(1) she is a disabled person within the meaning of the ADA; (2) she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) she has suffered [a] . . . refus[al] to make reasonable accommodations." *Equal Emp. Opportunity Comm'n v. FedEx Ground Package Sys., Inc.*, 158 F. Supp. 3d 393, 399 (W.D. Pa. 2016) (citing *Hohider v. UPS, Inc.*, 574 F.3d 169, 186 (3d Cir. 2009)). An employee who demonstrates that she is "regarded as" disabled, but who fails to demonstrate that she is

20

actually disabled, is not entitled to a reasonable accommodation. *Robinson v. First State Cmty. Action Agency*, 920 F.3d 182, 186 (3d Cir. 2019) (citing ADA § 3, 42 U.S.C.A. § 12102(1)(C)).

Having found that Plaintiff fails to demonstrate that she has an actual disability as defined by the ADA, this Court grants Defendant's Motion for Summary Judgment as to Plaintiff's ADA reasonable accommodation claim.

### C.   Retaliation Claim

Finally, Plaintiff asserts that Defendant terminated her in retaliation for requesting an accommodation—that is, permission to work remotely—by e-mail correspondence on July 31, 2021, several days before she was ultimately terminated. (Compl. ¶ 48; Pl.'s Opp'n Br. 7.) Defendant states that Plaintiff's termination was "solely based on her insubordination and unprofessional conduct." (Def.'s Moving Br. 16.)

"Retaliation claims are distinct from discrimination claims in that they do not require a plaintiff to prove that he or she has an actual disability; rather, a plaintiff need only show that he or she requested an accommodation in good faith." *Barber v. Subway*, 131 F. Supp. 3d 321, 329 (M.D. Pa. 2015) (citing *Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 187 (3d Cir. 2003)); *see also Echevarria v. AstraZeneca Pharm. LP*, 856 F.3d 119, No. 15-2232, 2017 WL 1593474, at *9 (1st Cir. May 2, 2017) ("It is well settled that an ADA plaintiff may assert a claim for retaliation even if she fails to succeed on a disability discrimination claim." (alterations omitted)).

In *McDonnell Douglas Corp. v. Green*, the Supreme Court established a burden-shifting framework that governs retaliation claims. *Canada v. Samuel Grossi & Sons, Inc.*, 49 F.4th 340, 346 (3d Cir. 2022) (citing 411 U.S. 792 (1973)). Under the first step of that framework, a plaintiff "must establish a prima facie case by showing: (1) that she engaged in protected employee activity; (2) there was an adverse action by the employer either after or contemporaneous with the

21

employee's protected activity; and (3) there is a causal connection between the employee's protected activity and the employer's adverse action. *Id.* (quotations omitted).

Upon making these showings, the employer then, under step two, has the burden of producing evidence that "present[s] a legitimate, non-retaliatory reason for having taken the adverse action." *Id.* If the employer meets this burden, the burden then shifts "back to the plaintiff to demonstrate that 'the employer's proffered explanation was false, and that retaliation was the real reason for the adverse employment action.'" *Id.*

      i.      *The First McDonnell-Douglas Step: Plaintiff's prima facie case of retaliation*

Plaintiff states that she engaged in a protected activity when she requested an accommodation to work remotely due to a medical condition on July 31, 2021. (Pl.'s Opp'n Br. 7.) As a result, Plaintiff asserts that she suffered an adverse employment action—termination—on August 4, 2021. (*Id.*) Plaintiff states a causal link is established because of "extremely suggestive timing, antagonism, disparate treatment[,] and pretext." (*Id.*) "Defendant does not dispute that Plaintiff engaged in a protected activity when she requested an accommodation on July 30, 2021[,]" but argues that Plaintiff cannot demonstrate that an adverse action took place *due to* her protected activity, and thus "cannot show causation between the protected activity and any adverse employment action." (Def.'s Moving Br. 25.) Specifically, Defendant argues that the decision to terminate Plaintiff was made on July 30, 2021, prior to Plaintiff's correspondence to Defendant's HR manager requesting the reasonable accommodation on July 31, 2021. (*Id.* at 26.)

In order to demonstrate a causal connection, a plaintiff may show: (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action; or (2) a pattern of antagonism coupled with timing. *Gardner v. SEPTA*, 410 F. Supp. 3d 723, 745

(E.D. Pa. 2019), *aff'd*, 824 F. App'x 100 (3d Cir. 2020) (citing *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007)).

As an initial matter, and as undisputed by both parties, the Court finds that Plaintiff satisfies the first two prongs of a prima facie case of retaliation. *See Barber*, 131 F. Supp. 3d at 329 (stating that the Third Circuit has found that protected activity "includes retaliation against an employee for requesting an accommodation." (citing *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 188-89 (3d Cir. 2010))); *Caver v. City of Trenton*, 420 F.3d 243, 256 (3d Cir. 2005) (finding that termination is "clearly [an] adverse employment decision[]").

Turning to the third prong, and considering all facts and logical inferences in the light most favorable to Plaintiff, *Pollock*, 794 F.2d at 864, the Court finds that a reasonable factfinder could determine that the decision to terminate Plaintiff could have been made after July 31, 2021, when Plaintiff sent correspondence requesting an accommodation. Based on the record, Defendant's employees do not unanimously agree as to when the decision to terminate Plaintiff was made, and who was involved in the decision. In fact, deposition records of Defendant's employees indicate that the decision to terminate Plaintiff may have been made on July 30, 2021, on August 2, 2021, or on August 3, 2021. (Allen Dep. 35:1-13; Meeler Dep. 43:9-17; Petrina Dep. 98:8-21.) Taking as true Plaintiff's logical inference that she was terminated four days after requesting her reasonable accommodation, the Court finds Plaintiff has sufficiently demonstrated that temporal proximity exists between her protected activity and Defendant's alleged retaliatory action.

The Court, therefore, determines for purposes of this motion that Plaintiff adduced sufficient evidence to establish a prima facie case of retaliation, and moves onto the next step.

> ii.     The Second McDonnell-Douglas Step: Defendant's legitimate,
> non-discriminatory reason for Plaintiff's termination

The Court next considers whether Defendant demonstrates that there was a legitimate, non-discriminatory reason for terminating Plaintiff. Defendant alleges that Plaintiff was terminated because of her insubordinate and unprofessional conduct, including her "declar[ation] [that] she would not be working in the office on July 30, 2021." (Def.'s Moving Br. 27.) Defendant also states that the termination decision was made by Meeler and Braunwart on July 30, 2021, before they knew about Plaintiff's medical condition and her accommodation request. (Def.'s Moving Br. 17; *see also* Meeler Dep. 40:12-16; Braunwart Dep. 55:15-22.)

Certainly, evidence in the record suggests that Plaintiff may have been terminated because of her insubordination and her unprofessionalism, and overall lack of fit with the company. (Petrina Dep. 73:5-7; Meeler Dep. 46:16-24.) Specifically, Meeler testified that Plaintiff was "not a good fit, obviously," based on comments she made "to [Defendant's] own employees about management" and "comments [Plaintiff] made in front of a customer." (Meeler Dep. 46:16-24.) Meeler stated that "[a]ll these things culminated" in "her termination."[17] (*Id.*) Petrina also recalled that Plaintiff "spoke disparagingly about [a] customer . . . in front of one of [Defendant's] vendors" by calling the customer's supervisor, "inept."[18] (Petrina Dep. 43:12-20; *see also* Meeler and Petrina's Aug. 2, 2021 Correspondence.) When Petrina "spoke to [Plaintiff] afterward about being

---

[17] In his August 2, 2021 correspondence to a HR director, Meeler stated that "[Plaintiff] has had something negative to say about everyone in and outside of our group, excluding the present company she happened to be in front of while venting." (Meeler and Petrina's Aug. 2, 2021 Correspondence 1; *see also* Meeler Dep. 51:2-24.) Meeler added that "[Plaintiff] said that she should be able to smoke pot at work" and "voiced her opinion that she 'should be the Operations Manager, because the present occupant of that position does not know how to do anything.'" (Meeler and Petrina's Aug. 2, 2021 Correspondence 1; *see also* Meeler Dep. 31:7-17; Petrina Dep. 48:8-15.)

[18] Petrina stated he could not recall why Plaintiff called the supervisor "inept." (Petrina Dep. 43:21-22.)

careful [regarding] what she says[,]" Petrina recalled that Plaintiff stated "I speak the truth." (Meeler and Petrina's Aug. 2, 2021 Correspondence 2.) Petrina stated that he let Plaintiff know that the behavior was unacceptable. (*Id.*) Finally, Petrina added that Plaintiff "disparaged everybody in th[e] office . . . about a week" after she joined the company; Petrina testified that "at first, [he] just took it lightly, but it became apparent that it was a trait of hers."[19] (Petrina Dep. 47:19-48:2.)

Taken together, the Court finds that Defendant has set forth legitimate and nondiscriminatory reasons for terminating Plaintiff, satisfying the second step, and shifting the burden back to Plaintiff.

> iii.    *The Third McDonnell-Douglas Step: Plaintiff raises a dispute of fact as to whether Defendant's legitimate reason for her termination constitutes pretext*

Finally, in the last step of the *McDonnell-Douglas* framework, a plaintiff must show that the employer's "asserted legitimate reason for her termination was a pretext for discriminatory retaliation." *See Ramage*, 834 F. Supp. 2d at 326 (quoting *McDonnell Douglas*, 411 U.S. at 802-03). The Third Circuit explains that:

> a plaintiff may defeat summary judgment at the third step of the *McDonnell Douglas* analysis "by pointing to some evidence, direct or circumstantial, from which a factfinder would reasonably either: (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's actions."

---

[19] For example, Petrina stated that during an internal meeting on July 27, 2021, Plaintiff said "I am leaving here by 2:00 pm because I am not [a] 'F-in' hourly like [another employee]." (Meeler and Petrina's Aug. 2, 2021 Correspondence 2.) Petrina stated that he discussed with Plaintiff her behavior in front of other employees; Petrina noted that her response was "I am not [a] F-in corporate phony like all of you are. All of you guys are just worried about your titles." (*Id.* (quotation marks omitted).)

*Teubert v. SRA Int'l, Inc.*, 192 F. Supp. 3d 569, 579 (D.N.J. 2016) (quoting *Jones v. Sch. Dist. of Pa.*, 198 F.3d 403, 413 (3d Cir. 1999)). In short, the non-moving plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [defendant's] proffered legitimate reasons for [its] action that a reasonable factfinder could rationally find them unworthy of credence, and . . . infer that [defendant] did not act for the asserted non-discriminatory reasons." *Griffith v. PNC Bank*, No. 13-5407, 2015 WL 2400222, at *7 (D.N.J. May 20, 2015) (internal quotation marks and citation omitted). In doing so, the Court must look at the "totality of circumstances" and "consider a broad array of evidence, including antagonism by the employer, inconsistencies in the reasons the employer gives for its adverse action, and any other evidence suggesting that the employer had a retaliatory animus when taking the adverse action." *Canada*, 49 F.4th at 347 (internal quotation marks and citations omitted).

Here, Plaintiff provides a list of evidence in the record that could establish pretext. Plaintiff states that Defendant "began trying to 'paper the file' by sending a flurry of [e-mail messages] about [Plaintiff's] alleged conduct" and attempts to "invent reasons to terminate [Plaintiff], on the heels of her accommodation request, [which] is the epitome of pretext." (Pl.'s Opp'n Br. 14.) As support, Plaintiff duly notes that there is a lack of documentation reflecting concerns Defendant had about Plaintiff during her employment. (Pl.'s Opp'n Br. 14, 16; *see also* Braunwart Dep. 33:11-34:8 (noting that concerns about Plaintiff were not memorialized in writing).) Indeed, the only documentation listing Plaintiff's alleged inappropriate behavior was sent on August 2, 2021 from Plaintiff's supervisors to a HR director. (Meeler and Petrina's Aug. 2, 2021 Correspondence.)

This correspondence was made several days *after* July 30, 2021,[20] when Defendant alleges Meeler and Braunwart made the decision to terminate Plaintiff.[21] (*See* Def.'s Moving Br. 28.) *See Jackson v. Planco*, 431 F. App'x 161, 166 (3d Cir. 2011) (affirming summary judgment in favor of defendant for a retaliation and discrimination claim in part because there was an "uncontroverted record" that plaintiff was under performance management, and plaintiff failed to demonstrate any inconsistencies or implausibilities to infer defendant's actions were pretextual).

Additionally, Plaintiff argues that "she was never spoken to, counseled, coached[,] or otherwise disciplined for anything[,]" such as her alleged insubordinate or unprofessional behavior. (Pl.'s Opp'n Br. 14.) The record, however, suggests that such concerns were discussed with Plaintiff on approximately two occasions by Petrina, her supervisor. (*See* Petrina Dep. 42:10-43:14.) Given the contrasting testimonies, Plaintiff raises a genuine dispute as to "how a jury [will] judge[] the credibility of the parties' witnesses[,]" which courts have found to be "improper" for disposition on summary judgment. *Sowell v. Kelly Servs., Inc.*, 139 F. Supp. 3d 684, 695-96, 697 (E.D. Pa. 2015) (finding that plaintiff established a basis for a finding of pretext because she "call[ed] into question" her former employer's credibility based on contradictory

---

[20] Moreover, Plaintiff points to conflicting deposition testimony by Defendant's employees as to when the decision to terminate Plaintiff was made, and thus highlights potential weaknesses and inconsistencies in Defendant's proffered legitimate reason as to why Defendant terminated Plaintiff. *See Griffith*, 2015 WL 2400222, at *7.

[21] To be sure, the Court acknowledges that the record includes Plaintiff's July 30, 2021 text message to Meeler, in which Plaintiff indicated that she was going to work from home that day. (July 30, 2021 Text Message.) Meeler forwarded the text message to Petrina and a HR employee on the same day, requesting that the correspondence be "document[ed]. . . in [Plaintiff's] file." (*Id.*; DSOF ¶ 29.) Additionally, Braunwart testified that he "started to hear[] some comments about" Plaintiff regarding statements made to customers about fellow employees around a month or two after she was hired. (Braunwart Dep. 25:2-18.) Yet, when weighed with the other evidence in the record, the text message and Braunwart's statement fail to fully resolve the potential genuine dispute as to whether Plaintiff's termination was in retaliation for Plaintiff's accommodation request.

testimony from both parties). "Because this Court cannot engage in a credibility determination at this stage, a genuine [dispute] of material fact exists as to pretext." *Schneider v. Works*, 223 F. Supp. 3d 308, 320 (E.D. Pa. 2016).

For the reasons outlined above, the Court finds that Plaintiff met her burden to survive summary judgment as to her ADA retaliation claim by presenting sufficient evidence to create a genuine dispute of material fact as to whether Defendant's reasons for terminating Plaintiff were pretextual. Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's ADA retaliation claim is denied.

IV.     **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted as to Plaintiff's disability discrimination claim (Count 1) and reasonable accommodation claim (Count 3). Defendant's Motion for Summary Judgment as to Plaintiff's retaliation claim (Count 2) is denied. The Court will issue an Order consistent with this Memorandum Opinion.


MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE